2025 IL App (1st) 240589-U

FIRST DIVISION
March 24, 2025

No. 1-24-0589

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| M&J ASPHALT PAVING COMPANY, INC., | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 21 CH 05822 |
| FIRST MIDWEST BANK, as Successor Trustee to | ) | |
| Standard Bank and Trust Company, | ) | Honorable |
| Defendant-Appellee, | ) | Lewis Nixon, |
| | ) | Judge Presiding. |
| and | ) | |
| | ) | |
| JOE INVESTMENT L.L.C., | ) | |
| | ) | |
| Intervenor-Appellant. | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Pucinski concurred in the judgment.

**O R D E R**

¶ 1   *Held*:   Pursuant to *First Capitol Mortgage Corp. v. Talandis Construction Corp.,* 63 Ill. 2d 128, 133 (1976), we reverse and remand the matter to the circuit court because we find that the appellant has demonstrated a *prima facie* error in the trial court's denial of its petition to intervene, as of right. See 735 ILCS 5/2-408(a) (West 2020).

¶ 2   In this appeal, the prospective intervenor, Joe Investment L.L.C. ("Joe Investment")

appeals from the circuit court's order denying its petition to intervene in a foreclosure action filed by the plaintiff, M&J Asphalt Paving Company, Inc. ("M&J Asphalt") to foreclose a mechanics lien on a property owned by the defendant, First Midwest Bank, an Illinois land trust ("the land trust") as successor trustee to Standard Bank and Trust Company, under Trust Agreement Dated February 28, 2013, and known as Trust No. 21446. Joe Investment contends that contrary to the circuit court's ruling, as the highest bidder in the judicial foreclosure sale of the land trust's property it had a right to intervene in M&J Asphalt's mechanics lien foreclosure action. For the following reasons, we reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4      At the outset, we note that the record on appeal does not contain any report of the proceedings below, nor any acceptable substitute such as a bystanders' report, or an agreed statement of facts, as authorized under Illinois Supreme Court Rule 323 (Ill. S. Ct. R. 323 (eff. Dec. 13, 2005)). Accordingly, we have pieced together the following relevant facts and procedural history from the bare common-law record that is before us.

¶ 5      In 2021, the land trust owned a property located at 5933 West 115th Street, in Alsip, Illinois ("the property") and contracted with L&L Construction Services, L.L.C. ("L&L Construction"), as the general contractor, to provide labor and material to improve it. L&L Construction subsequently subcontracted with M&J Asphalt to assist it with asphalt paving and striping work on the property. When it came time for payment, the land trust asked L&L Construction whether it had subcontracted with anyone. L&L Construction informed the land trust that it had not, and provided it with a lien waiver, but not a sworn statement. In fact, L&L Construction never paid M&J Asphalt and instead filed for bankruptcy.

¶ 6      After it was unable to obtain payment for its services, M&J recorded a lien on the property

pursuant to the Illinois Mechanics' Lien Act (Mechanics' Lien Act) (770 ILCS 60/0.01 *et seq.* (West 2020)) by first, serving a "Subcontractor's Notice and Claim of Lien" on the land trust (770 ILCS 60/24 (West 2020)) and then recording that lien in the Cook County Clerk's Office. On November 17, 2021, M&J Asphalt filed an action to foreclose its lien on the property.

¶ 7    On January 27, 2022, the circuit court entered a default judgment in favor of M&J Asphalt. Subsequently, on March 29, 2022, the court entered a judgment order of foreclosure and sale.[1] According to that order, pursuant to the Mechanic's Lien Act (770 ILCS 60/0.01 *et seq.* (West 2020)), M&J Asphalt had a valid lien on the property in the amount of $46,387, and the land trust, or someone on its behalf (including the beneficiaries of the trust), was ordered to pay the amounts owed within 30 days, together with interest (10% per annum), plus $569.21 in court costs and legal fees. If the land trust defaulted on the payments, the property was to be sold at a public auction to the highest bidder by the Cook County Sherriff. According to the order, the Sherriff would provide the highest bidder at the auction with a certificate of sale, and if the property was not redeemed "within the time allowed by the laws of this State, as herein set forth," the Sherriff would execute a deed of conveyance to the purchaser. The order then inexplicably noted that the period of redemption would expire three months after the entry of the foreclosure judgement, instead of six months after the judicial sale, as is required for a claim brought under the Mechanics Lien Act (see 770 ILCS 60/20, 735 ILCS 5/12-122 (West 2020)), and that the land trust would thereafter be "forever barred and foreclosed from all right to redeem and claim an interest" in the property.

¶ 8    After the land trust filed a motion to vacate the default judgment of foreclosure and sale, the judicial sale was stayed until November 10, 2022, when the court denied the motion, lifted the stay and reinstated the sale.

---

[1] The record reveals that the draft of the entered order was proposed by M&J Asphalt.

¶ 9     On December 15, 2022, upon M&J Asphalt's motion, the circuit court appointed the Judicial Sales Corporation to act as the sales agent responsible for conducting the judicial sale. On January 20, 2023, the Judicial Sales Corporation filed a "Notice of Sale for a Mechanics Lien" and proof of sending that notice. Among other things, relevant to this appeal, that Notice stated that the Judicial Sales Corporation would sell the property at public auction to the highest bidder but that the "sale was subject to confirmation by the court," such that "[u]pon payment in full of the amount bid" the purchaser would receive a certificate of sale that would "entitle" it to a deed to the real estate "after confirmation of sale." Glaringly, however, the notice explicitly stated that "[t]he rights of redemption have expired."

¶ 10     The judicial sale took place on March 14, 2023, and Joe Investment emerged as the highest bidder with a bid and deposit of $400,000. The Judicial Sales Corporation issued a certificate of sale to Joe Investment on March 20, 2023.

¶ 11     On that same day, Joe Investment filed a "Petition to Intervene and a Motion to Confirm Sale." Joe Investment argued that it was entitled to intervene both as a matter of right, and as a matter of the circuit court's discretion. See 735 ILCS 5/2-408(a), (b) (West 2020). Joe Investment asserted that it not only had a clear interest in the disposition of the property as the highest bidder and holder of the certificate of sale, but also that it had deposited $400,000 with the selling officer. Accordingly, because Joe Investment's interests were not aligned with those of M&J Asphalt or the land trust, Joe Investment could not rely on either of those parties to represent them.

¶ 12     On March 31, 2023, acting jointly, M&J Asphalt and the land trust[2] filed a motion to vacate the judicial sale and voluntarily dismiss the case, asserting that on March 27, 2023 (three days after

---

[2] The record reveals that the motion was initially filed only by M&J Asphalt. However, according to the circuit court's subsequent memorandum orders, the land trust joined in that motion during its oral arguments. Since Joe Investment does not appear to contest this fact, we will accept the circuit court's pronouncement as true.

the judicial sale) M&J Asphalt had received "a payoff, in full" of the amounts owed to it by the land trust. No evidence of that transaction, however, was attached to the joint motion. Nonetheless, M&J Asphalt claimed that it did not intend to file a motion to confirm the sale. M&J Asphalt further argued that because it was the party that initiated the foreclose proceedings, under Illinois law, if it decided not to pursue the confirmation, the court was not obligated to confirm the sale. In fact, Illinois law favored redemptions and the mortgagor's equity in the real estate.

¶ 13    The circuit court scheduled a presentment hearing for April 6, 2023, which it later described as a "spontaneous oral argument" at which the parties raised a "litany of questions" and arguments. After taking the matter under advisement, on April 20, 2023, the circuit court issued a detailed memorandum order, denying Joe Investment's motion to intervene, vacating the judicial sale, returning the $400,000 deposit to Joe Investment and dismissing with prejudice M&J Asphalt's foreclosure action against the land trust.

¶ 14    In doing so, the court found that Joe Investment was not entitled to intervene because the joint motion of M&J Asphalt and the land trust to voluntarily dismiss the foreclosure action and vacate the judicial sale predated Joe Investment's motion to confirm the sale, rendering intervention unnecessary. The court acknowledged that Joe Investment's motion to confirm the judicial sale accompanied its petition to intervene but found that the motion was merely an exhibit to the petition seeking intervention and was therefore never filed with the court. See 735 ILCS 5/2-408(e) (West 2020). In addition, the court held that even if it were to grant the petition to intervene, any motion to confirm the sale would necessarily postdate the joint motion for voluntary dismissal, which the court would grant first. In that scenario, the petition for intervention and the motion to confirm sale would become moot.

¶ 15    In the alternative, the court held that M&J Asphalt had a right to elect an inconsistent and

5

alternative remedy in its own litigation and choose not to perfect the judicial sale and instead accept direct payment from the land trust. The court explained that until and unless it confirmed the judicial sale, Joe Investment had no legal right in the property, but rather only a prospective one. As such, M&J Asphalt could and did make "a reasonable business decision" when it elected to take a direct payment from the land trust, which the trust had already placed into escrow, instead of waiting for the potentially longer and arguably riskier process of having to confirm the judicial sale prior to getting paid.

¶ 16    As another alternative, the court found that the redemption period for the land trust to pay the monies owed to M&J Asphalt had not yet expired. The court explained that unlike in a mortgage foreclosure case where the redemption period is three months from the judgment (735 ILCS 5/-15-1603(b)(1) (West 2020)), in a mechanics lien case the period of redemption is six months from the "judicial sale" (770 ILCS 60/20, 735 ILCS 5/12-122 (West 2020)). Accordingly, the land trust had ample time to redeem the property.

¶ 17    On May 12, 2023, Joe Investment filed a motion to reconsider, asserting that it should have been permitted to intervene as a matter of right (735 ILCS 5/2-408(a) (West 2020)) and that the circuit court denied it due process when it found that its petition to intervene was moot because of the later-filed joint motion to vacate the judicial sale and voluntarily dismiss the case. Joe Investment also asserted that because M&J Asphalt chose the method by which to enforce its judgment by asking that the property be sold at an auction and that the Judicial Sales Corporation be appointed as the selling officer, it chose to enforce its mechanics lien by way of the Illinois Mortgage Foreclosure Law (IMFL) (735 ILCS 5/15-1107(b), 1603(b) (West 2020)) rather than a Mechanics Lien Act (770 ILCS 60/20, 735 ILCS 5/12-122 (West 2020)) and therefore should not be permitted to vacate the judicial sale only because it was not the highest bidder at the auction.

According to Joe Investment, allowing M&J Asphalt to do so would encourage fraud in future mortgage foreclosure proceedings.

¶ 18    On November 30, 2023, the court heard arguments on Joe Investment's motion to reconsider. After taking the matter under advisement, on February 15, 2024, in a written memorandum order, the circuit court denied that motion. In doing so, the court first explained in detail why it believed that the mechanics lien foreclosure action in this case was governed by the Mechanics Lien Act (770 ILCS 60/20, 735 ILCS 5/12-122 (West 2020)) rather than the IMLF (735 ILCS 5/15-1603(b)(1) (West 2020)) such that the six-month redemption period applied, and the land trust had ample time to redeem the property by paying M&J Asphalt. In doing so, the court acknowledged the error in the original foreclosure judgment that noted that the redemption period was three, rather than six months, but explained that the order was proposed by M&J Asphalt and that when viewed in its totality the order revealed that the foreclosure action was brought and the judgment, entered pursuant to the Mechanics Lien Act. *Id*. The court then acknowledged that if the right of redemption had been the basis for its original ruling, under the Mechanics Lien Act, Joe Investment would be entitled to interest as the highest bidder. See 770 ILCS 60/20, 735 ILCS 5/12-122 (West 2020). Nonetheless, the court explained that the right of redemption was not the basis of its original holding. Instead, it reiterated that the holding was procedural, namely that Joe Investment's motion to confirm the sale was never filed with the court and was instead an exhibit to the petition to intervene, such that the joint motion for voluntary dismissal predated it, rendering any intervention unnecessary. Joe Investment now appeals.

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, Joe Investment challenges the circuit court's denial of its motion to intervene and confirm the judicial sale. In doing so, Joe Investment makes four arguments. First, Joe

Investment asserts that the circuit court made a procedural error when it found that its petition to intervene could not be considered before the joint motion to voluntarily dismiss the case. Second, Joe Investment argues that contrary to the court's ruling, the foreclosure of the lien below was conducted pursuant to the IMLF (735 ILCS 5/15-1107(b), 1603(b) (West 2020)), which provides for a three-month redemption period, which had expired prior to the judicial sale, such that the land trust could no longer offer money to M&J Asphalt in return for the property. Third, Joe Investment argues that even if the foreclosure of the lien was conducted pursuant to the Mechanics Lien Act and the six-month redemption period was still available, no redemption took place because M&J Asphalt never paid the land trust the requisite statutory 10% interest on top of the property value. See 770 ILCS 60/20, 735 ILCS 5/12-122 (West 2020)). Lastly, Joe Investment asserts that because M&J Asphalt chose the method by which to enforce its lien by participating in the judicial sale, it should not be allowed to subsequently elect an alternative and inconsistent remedy to Joe Investment's detriment.

¶ 21     Neither M&J Asphalt nor the land trust have filed appllees' briefs in this court. While we may not reverse summarily on that basis alone, we need not serve as an advocate for M&J Asphalt or the land trust or search the record for a basis upon which to affirm. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.,* 63 Ill. 2d 128, 133 (1976); *Orava v. Plunkett Furniture Co.*, 297 Ill. App. 3d 635, 636 (1998). Unless the record is simple and the issues can be easily decided without the aid of an appellee's brief, we will not decide the merits of the appeal but will reverse the judgment of the trial court "if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record." *Talandis*, 63 Ill. 2d 133; *Orava*, 297 Ill. App. 3d 636.

¶ 22     We do not believe that the issues in this case can easily be decided. Therefore, the question

before us is whether Joe Investment's brief establishes *prima facie* reversible error. " '*Prima facie* means, "at first sight, on the first appearance, on the face of it, so far as can be judged from the first disclosure; presumably; a fact presumed to be true unless disproved by some evidence to the contrary." [Citation.]' " *Talandis*, 63 Ill. 2d at 132 (quoting *Harrington v. Hartman*, 142 Ind. App. 87, 89-90; 233 N.E.2d 189, 191 (Ind. Ct. App.) (1967)).

¶ 23    Because we find it dispositive, we address Joe Investment's procedural argument regarding the circuit court's denial of its petition to intervene first. In this respect, Joe Investment contends that having deposited $400,000 to the Judicial Sales Corporation, as the highest bidder at the judicial sale and the holder of the certificate of sale, it was entitled to intervene in the foreclosure action, as of right. See 735 ILCS 5/2-408(a) (West 2020). We agree.

¶ 24    Section 2-408(a) of the Illinois Code of Civil Procedure (Code), governs interventions as of right, and provides in pertinent part that "upon a timely filing," "anyone shall be permitted to intervene" when, *inter alia*: "the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court or a court officer," or "the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action." 735 ILCS 5/2-408(a) (2), (3) (West 2020).

¶ 25    We have repeatedly held that when considering a party's motion to intervene as of right, the circuit court's discretion is limited to a consideration of "whether the petition to intervene is timely, whether the petitioner's interest is sufficient, and whether that interest is being adequately represented by someone else in the lawsuit." (Internal quotation marks omitted). *Building Owners and Managers Association v. Commission of Board of Elections of the City of Chicago*, 2024 IL App (1st) 240417, ¶ 22 (quoting *Flood v. Richey*, 2016 IL App (4th) 150594, ¶ 15). "[If those]

threshold requirements have been met, the plain meaning of the statute directs that the petition be granted." *City of Chicago v. John Hancock Mutual Life Insurance Co.,* 127 Ill. App. 3d 140, 144 (1984). We review the circuit court's order denying a petition for intervention as of right for an abuse of discretion. *In re Application of the County Collector of Du Page for Judgment for Delinquent Taxes for the Year 1992*, 181 Ill. 2d 237, 247-48 (1998).

¶ 26     In the present case, there can be no doubt that as the highest bidder at the auction and the holder of the certificate of sale, Joe Investment was "so situated as to be adversely affected by a distribution or other disposition of property" in the court's control. 735 ILCS 5/2-408(a)(3) (West 2020). Moreover, having deposited the $400,000 with the Judicial Sales Corporation and as the holder of the certificate of sale, Joe Investment had an interest in the property, albeit a prospective one, which would not have been "adequately represented by the existing parties," while Joe Investment would have been "bound" by the court's "order or judgment" in the suit. 735 ILCS 5/2-408(a)(2) (West 2020). Accordingly, since these threshold requirements were met, the plain language of the statute directed that the petition to intervene be granted. *John Hancock Mutual Life Insurance Co.,* 127 Ill. App. 3d at 144.

¶ 27     The circuit court's denial of the petition to intervene on the basis that the motion to confirm sale upon which that petition was based was merely an exhibit, and therefore postdated the joint motion for voluntary dismissal, making the petition itself moot, therefore, constituted an abuse of discretion. See *Village of Wilmette v. 1618 Sheridan Road Condo Association*, 2024 IL App (1st) 190264-U (holding that the circuit court erred in granting a motion for voluntary dismissal prior to deciding a petition to intervene because "[s]ince 1904 our courts have held that 'an intervener has the right to claim the benefit of the original suit, and to prosecute it to judgment,' " and that this " 'right cannot be defeated by the dismissal of the suit by the plaintiffs' " after the intervenor

has already filed his petition to intervene) (citing *Gage v. Cameron*, 212 Ill. 146, 171-172 (1904)); *In re Marriage of Black*, 133 Ill. App. 3d 59, 65 (1985) (holding that an intervenor has the right to claim the benefit of the original suit and a motion to dismiss cannot defeat such a right after the filing and notice of the intervenor); *Citicorp Savings of Illinois v. First Chicago Trust Co. of Illinois*, 269 Ill. App. 3d 293, 298-99 (1995) ("While a person may not normally seek intervention after the rights of the original parties have been determined \*\*\*, a motion to intervene may be filed even after dismissal of the case and still be timely where necessary to protect the interests of the intervenor." (Internal citations omitted.)) Moreover, contrary to the circuit court's findings, as the highest bidder at a judicial sale, Joe Investment had a legally protected interest in the property and would have been entitled to intervene in the foreclosure action even after the judgment had been redeemed. See *e.g., Fleet Mortgage Corp v. Deale*, 287 Ill. App. 3d 385, 387 (1997) (allowing a third-party purchaser to intervene after the foreclosure sale where the mortgagors had already redeemed the judgment amount prior to the sale and failed to cancel the sale).

¶ 28     Because we find that Joe Investment has made a *prima facie* showing that the circuit court erred in denying its petition to intervene as of right, we need not act as an advocate for M&J Asphalt or the land trust or search the record for a basis upon which to affirm. See *Talandis*, 63 Ill. 2d at 133 (holding that a reviewing court should not be compelled to act as appellees' advocate and search the record for purposes of sustaining the circuit court's judgment). This is particularly true since the record is not simple and the issues are far from easily decided without the benefit of appellees briefs, which for reasons unclear to us, M&J Asphalt and the land trust have chosen not to file.

¶ 29     Accordingly, we reverse the circuit court's April 20, 2023, order in its entirety and grant Joe Investment's petition to intervene. Joe Investment is given the same rights as if it were an

original party to the proceeding. The matter is remanded to the circuit court with direction that Joe Investment be granted leave to file its motion to confirm the judicial sale *instanter*. On remand, the circuit court shall consider that motion and determine whether in light of the subsequently filed joint motion of M&J Asphalt and the land trust to vacate the sale and voluntarily dismiss the foreclosure action, the motion to confirm sale should have been granted.

¶ 30    Reversed and remanded.